Good morning. May it please the Court, David Baumgarten for the Appellant. Obviously, Your Honor, two issues before the Court this morning. Number one, did the District Court abuse its discretion in dismissing rather than staying the action, pending the outcome of this disputed claims process? And number two, did the District Court abuse its discretion in denying the Appellant leave to amend to plead additional facts that would support either the stay request or the exhaustion exception to the excuse me, the futility exception to the exhaustion of the Administrative Remedies Doctrine. With respect to the first issue, I think we can all agree that because the administrative process at issue in this case was not mandated by Congress, that the District Court, in fact, did have the discretion to either proceed with the case and determine the coverage issue, or as we had requested, stay the action, pending the outcome of the disputed claims process or the administrative process. What is going on with the administrative process? What's going on between Blue Cross and your client? Nothing? At this point, well, actually, Your Honor, a substantial headway was made in connection with the Ninth Circuit Mediation Program. And there was, without, I'm not sure how far I can get into that, whether it's covered by the mediation privilege, but there was substantial headway made in determining whether there was coverage for some or all of the care that was administered to Mrs. Shimsky during the subject time period. We did make substantial headway in that regard. Then I got a letter that said, no, go back to square one, so we've done that. And I suspect that Blue Cross is waiting for this Court's determination to find out what they're going to do or whether they're going to do anything. Because, again, the concern is, or the potential issue is, that there's this three-year limitations period. And the question is, when you do the look-back from the three years, can we get coverage for any of the care? And so I'm concerned, or the concern in filing the complaint was, you know, we're knocking on Blue Cross's door, we knock on OPM's door, we need a coverage decision. Someone at least tell us one way or the other so we know what to do to jump through the administration. So if we were to conclude that the stage, rather than a dismissal, should have been granted, does that, that moots the leap to amend? It does, Your Honor. And basically the process would go as follows. We would continue the work that we started with the assistance of the Ninth Circuit Mediation Program. There are essentially 19 boxes, I think the number is, bankers' boxes of medical records. That process would continue. There would be a formal coverage denial or acceptance by Blue Cross. And then we would take that up the ladder under the administrative review process. And depending on what OPM then does, we'd either go back to the district court for relief, or perhaps we get coverage or enough coverage to resolve the hospital's claim and we don't have to bother the court at the trial level or this level any further. Well, maybe we could hear from the government and see where this fits in. Thank you, Your Honor. Good morning, Your Honor. Cindy Cipriani appearing on behalf of OPM. I can understand why, at first blush, a stay might seem attractive in this instance. I hope so. Well, the problem with it, Your Honor, is that essentially the stay opens the floodgates for people, instead of exhausting, to come into district court in the first instance. How could he exhaust? Well, Your Honor, he did have several options. What was he supposed to do? He did have several options. He could have assigned his right to the benefits to Kindred, which had the medical information, could have worked directly with Blue Cross Blue Shield. He also could have construed the failure to act as a denial and pursued an OPM remedy as to that. He could have construed it that way? Would OPM have construed it that way? Yes. In fact, under the regulation 890.105.E13, that regulation provides that within 120 days of being told by the insurer that they would like more information, you can ask for OPM review of that. And that's exactly what occurred in this instance. He had in 2005 and 2006 some letters from the insurer saying we would like more information, more medical information. He could have gone within 120 days and started the process. He could have invoked OPM review, construed the failure to act as a denial, asked them to review the request for more information, and then the district court would have been afforded with a full and complete administrative record. And instead of that occurring, he came to the district court, and he probably came prematurely because according to the information in the record, the disputed bills were for 2006 and 2007, or the earliest was 2005. He had until the end of 2008 to try to invoke some of these procedures and responsibly exhaust the claims. So he did not have to come to district court first. And the problem with coming to district court first is there's no such thing as a magical wand that just stays in action in a busy district court. There's constantly an automatic settlement conference provision, so you end up in settlement trying to create a record that should have been created at the administrative stage below. And what you're missing at that point is you're missing the expertise of the administrative body. I mean, the exhaustion process serves several goals. There was, just so we understand the process, in this case, all of the options that you're saying that he could have invoked were clearly made quite clear to him so that he could have known readily, without getting to a lawyer, could have known that when he got stalled by Blue Cross, that he could have treated that as a constructive denial and filed. This is something that the claimant would have known and been able to do? I believe that a responsible claimant would have been a diligent claimant, even if not a lawyer, would have been placed on notice that he had been denied. For example, there is a letter in this record, which of course is not an administrative record. It's just an assortment of documents that an appellant added to the district court record that shows that he did receive a denial. It's at ER 91. He acknowledged that denial at ER 94, and yet he never acted on it. There also are a series of regulations. And, in fact, he was represented by counsel in connection with the Kindred suit. So he did have counsel who was acting for him on behalf of OPM. And the regulations are quite clear that he did have the option, upon being asked for more information from the insurance company, to go to OPM and seek OPM's intervention, and he failed to do that. And when it got to the district court, you said that there are all these procedures, including mandatory settlement conference. Was there such in this case? Actually, in this case, Your Honor, because we immediately filed a motion to dismiss, there was no immediate E&E, which is what takes place in the Southern District. There's an early neutral evaluation conference as soon as an answer is filed. In this case, the government filed an actual motion to dismiss for failure to exhaust. So that did not occur. However, if it goes back, it would occur. And did it point out, did the motion to dismiss advise counsel at that point that it was a premature filing? Yes. The motion to dismiss was based on the fact that this matter had to be exhausted, and essentially these are APA review matters, and you're coming to district court with no district record, or no agency administrative record, and no final agency action, which is the only thing the district court can do. Their only option is to, under an arbitrary and capricious APA standard, review the analysis that took place below and review the record that took place below. So if you allow for a stay in this case, it basically opens the door for people to come into district court and try to negotiate these out instead of following the procedure that Congress intended and that the regulations intended. I want to make sure I understand where the regulations are. So the regulation that you had in mind with the 120-day period is 890.105E? E1, little 3. Little 3. Yes, Your Honor. Okay. And under that, what he was supposed to do, what Mr. Shimpsey was supposed to do was to make a formal request to Blue Cross Blue Shield to either give him an up or down. And if they failed to respond to him after 120 days, then at that point he can file. Must he file at that point or be barred? Or can he continue to wait for Blue Cross Blue Shield's resolution of this? I think what occurs is that he's supposed to within 120 days. That's where the 120 days comes from. Okay, if the carrier fails to respond, how long are we supposed to know that the carrier has failed to respond? How long are you supposed to wait on that? Well, at this point, he had had several months. He's supposed to, when he's asked for the information from the insurer, when the insurer comes back and they don't give a denial and they don't accept the claim, what they say is we want more information. Within 120 days of that, if he can't get them to act, he goes to OPM and he invokes OPM review. Okay, that's different from what you just told me, so now I'm really confused. So if he goes to Blue Cross Blue Shield and says, give me an up or down, just give me an answer, even if it's not the one I want to hear, because I need to know what to do here, then how long is he supposed to wait until he hears from Blue Cross Blue Shield? I don't know that there's a definitive limit there, Your Honor. No statute of limitations could possibly run on that, and he's not entitled to go to OPM at that point, is he? I believe that if what occurred in this case, had he been responsible, what he was obligated to do is they didn't give him an up or down. What they said was we want more information. Now the more information is, that's little three. Right. Okay, so within 120 days after the date the carrier requested additional information. He goes to OPM and he asks for OPM assistance at that point. And OPM can extend that time limit. So if he decides to wait 240 days or 200 days instead of 120 days, OPM can extend that time limit. If OPM refuses to extend any time limit in these regulations, he can certainly come to district court after he's exhausted and complain to the district court and say it should have been equitably stopped or told at that point. But at least at the point it's entering the district courthouse doors, there is some record put together. There is some effort to put it officially before OPM, so that OPM can exercise its expertise. It ensures uniformity and consistency among the coverage rulings. It's less cost to the plaintiff, so it saves money. And for all the reasons this court explained in the Botsford case, it is what Congress intended, as OPM is the one that has the most leverage with the carriers, because they're the ones that are renegotiating contracts with the carriers at regular intervals, whereas a single individual claimant does not have as much leverage with the carriers. So if in this instance the court has to issue a stay rather than requiring exhaustion when no due diligence has been shown, it really is an invitation to kind of open the floodgates for other people to do that. Counsel, did you make this argument about 890.105E103 in your brief? Well, Your Honor, I believe what we argued in the brief was broadly that there was a lack of diligence and that there should have been exhaustion prior to coming to court. But you didn't cite the provision you've just cited to us today in your brief, did you? I don't know that that specific provision was cited, Your Honor. I do believe that I talked about – I'm looking at the table of contents. It's not in the table of authorities. So does that mean that the government has waived the argument? Well, Your Honor, I believe that because it's statutory and it's encompassed within the idea of exhaustion, that it's not a specific argument that is waived. It would have been very useful, Counsel, for us in preparing for this argument if you had cited the provision that you gave in answer to me at the beginning because it's actually a pretty powerful provision. But it's not any place in your brief. I agree it would have been helpful to include it in the brief, Your Honor. Did you raise it before the district court? I don't know that it was specifically – that the idea of tolling, I believe, was raised before the district court, that the district court had the opportunity, the appellant had the opportunity to seek tolling and was not bound by the statute of limitations, the three-year statute of limitations to immediately come into district court. I mean, under his construal of the exhaustion doctrine, it's not jurisdictional. If it is jurisdictional, then there is no tolling. If it is not jurisdictional, automatically you can argue tolling. Essentially what he was saying is I'm equitably estopped. We disagree with that premise. His premise was I'm equitably estopped from getting the exhaustion completed. The exhaustion is jurisdictional or it's not jurisdictional? Our position is under the Bryan case, they did find that it was jurisdictional. And under this circuit's Botsford case, they indicate that it's clearly contemplated by the legislation which vested OPM with authority and also in the legislative history, which indicates – I think that we've pretty clearly said that you don't, that agency regulations don't get to create jurisdictional bars. Right. Well, here we have the legislative history as well, but assuming it's – Legislative history doesn't create jurisdiction, though. Okay. Then in that case, Your Honor, if it's discretionary, then it is subject to essentially tolling, equitable estoppel and tolling, and he would have had the opportunity to come into court and say it's equitably – the OPM is equitably estopped or Blue Cross is equitably estopped for making this argument or it should be tolled because I was prevented from getting the information I needed when I needed it. But the record, insufficient as it is, because it is not an official administrative record, does make clear that there were numerous steps that he could have taken, and he was informed of denials and he did have time to exhaust. The earliest failures to pay that he's alleging were for services in 2005 and 2006, and he had until the end of 2008. So it wasn't really necessary for him to come in in December 2007 to enter the courthouse doors with an unexhausted record. Okay. Counsel. Thank you. Thank you. Your Honor, several issues. Number one, December 31st, 2007, was the potential deadline because there were payments in 2004 that were disputed between Blue Cross and Kindred. So for the last four months of 2004, there was a coverage dispute, and to avoid the three-year limitations period, which runs through the end of the third year in which benefits were paid or not paid, December 31st, 2007, was the deadline. We did not have an extra year if we were going to challenge or seek coverage for that 2004 time period. So that's issue number one. Issue number two is it is in the record that we did contact OPM and say, we need your help. We haven't got a decision from Blue Cross. I wrote that letter. What's in the record is it took eight months to get a response. The response was, we don't know who you are. Send us more information. So, Your Honor, courts are a place of redress for grievances. The appellant was stuck between the proverbial rock and the hard place. Counsel, do you have a response to the government's argument about 5 CFR 890.105E? Well, beyond the fact, Your Honor, that it wasn't raised specifically, beyond the fact that we're dealing with .105E1 subsection 3 and a layperson and what they're supposed to figure out, I think that's a little unreasonable. But, again, the fact that Mr. Shimsky, through my firm, after it was retained on this matter, did try to get ahold of OPM because that was the next step in the process and didn't get a response for eight months, I think goes just to the argument that we did do what OPM asked us to do and we still didn't get anywhere. As far as the clogging of the courts, the avoiding of the administrative process and not allowing the expertise of OPM to come into play, no one's trying to avoid the administrative process. We would love the administrative process to go forward. That's the point of the suit, to get somebody's attention so that we can get somewhere. No, we did not have an E&E or an MSC in the district court, but, ironically, we did make headway with this court's mediation program and, perhaps, had we had one in the district court, we could have made some more progress. Can you give me the ER side to your letter to OPM? It's in, actually, one of my declarations in order. Okay.  It is, Your Honor. Thank you. My declaration starts on 74 and it is on 76. Okay, thank you. Thank you. So the point, Your Honors, is that we are not seeking to avoid or discount or circumvent the process. All we're asking the court to do is preserve the remedy so that we can go through the process because we were not able to get anywhere through the administrative process to begin with and we didn't want to have anyone come back and say that, at a later date, the claims were somehow barred by the statute of limitations. So we would request that the court reverse the order dismissing the case, direct the court to the district court to stay the matter pending the outcome of the administrative process. Thank you. Thank you. Thank you, counsel. Appreciate the argument, and the case is submitted.
judges: Strom, Fisher, Bybee